

Jan 30 2023

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF FORENSIC EXTRACTIONS OF AN APPLE I-PHONE ASSIGNED CALL NUMBER 804-943-4356, ANDROID CELL PHONE ASSIGNED CALL NUMBER 804-490-5199 AND ITS CONTENTS SEIZED FROM VINCENT BANKS NOVEMBER 27, 2021. CONTENTS OF WHICH ARE CURRENTLY LOCATED AT THE ATF RICHMOMD I FIELD OFFICE, LOCATED AT 1011 BOULDER SPRINGS DRIVE SUITE 300, NORTH CHESTERFIELD VA 23225. | Case No. 3:23sw13<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Roderick Herndon, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— an I-Phone assigned call number 804-943-4356, an Android cell phone assigned call number 804-490-5199 and their contents seized from VINCENT BANKS on November 27, 2021 (hereinafter, the **SUBJECT DEVICE 1 and SUBJECT DEVICE 2**), more fully described in Attachment A—contents which are currently located at the ATF Richmond I Field Office located at 1011 Boulder Springs Dr Suite 300, North Chesterfield VA 23225, and the extraction from that property of electronically stored information, described in Attachment B, which is incorporated by reference.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) and have been since May 2017. I am a graduate of the Federal Law Enforcement Training Center (FLETC) and the ATF Special Agent Basic Training Academy. I received specialized training concerning violations of the Gun Control Act within Title 18 and the National Firearms Act within Title 26, of the United States Code pursuant to firearm violations. I am a duly sworn agent who is authorized to carry firearms, execute warrants, and make arrests for offenses against the Unites States and to perform such other duties as authorized by law.

3. While employed at ATF, I have been the affiant on several Federal Search Warrants for criminal offenses involving illegal firearms trafficking and narcotics distribution and their associated conspiracies. Furthermore, I have investigated complex cases involving violent crime, criminal organizations, illegal firearms trafficking, and narcotics distribution that resulted in convictions in both federal and state court.

4. I have participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving the possession with the intent to distribute controlled substances and illegal possession of firearms.

5. I am familiar with the methods drug and firearm traffickers use to conduct their illegal activities, to include communication methods, vehicles, text messaging, and narcotics transactions. I received specialized training in narcotics identification, detection, and trafficking, as well as participated in multiple narcotics distribution and firearm interdiction assignments with state and local law enforcement jurisdictions.

6. As a part of narcotics investigations, I have interviewed informants and cooperating witnesses, including drug users and drug traffickers; conducted physical

2

surveillance; conducted consensual monitoring and recording of telephonic and non-telephonic communications; and obtained and executed search warrants that have led to substantial seizures of narcotics, firearms, and other contraband. Based on my training, knowledge, and experience, I know that firearms and narcotics traffickers utilize mobile devices to: maintain contact with their customers, suppliers and associates; maintain contact lists and communication applications ("apps"); plan and maintain information related to travel; access and store financial information and conduct banking activities; maintain calendars and reminders; and take and store pictures of themselves, their associates, money, firearms and other indicia of illegal activities.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C §§ 841(a)(1) Possession with intent to Distribute a Controlled Substance, as well as violations of 18 U.S.C. § 924(c)(1)(A), Possession of a Firearm in Furtherance of a Drug Trafficking Crime, has been committed by VINCENT BANKS and that a search of the devices described in Attachment A may contain evidence of these crimes, as described in Attachment B.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8. The property to be searched are an I-Phone assigned call number 804-943-4356 (**SUBJECT DEVICE 1**) and an Android cell phone assigned call number 804-490-5199 (**SUBJECT DEVICE 2**) seized from VINCENT BANKS on November 27, 2021 (**SUBJECT DEVICE 1 and SUBJECT DEVICE 2**). The contents of **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** are currently located at the ATF Richmond I Field Office located at 1011

3

Boulder Springs Dr Suite 300, Norther Chesterfield VA 23225. The applied-for warrant requests authorization to review forensic examinations on **SUBJECT DEVICE 1** and **SUBEJCT DEVICE 2** for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELEVANT STATUTORY PROVISIONS

9. 21 U.S.C § 841(a)(1) - Possession with Intent to Distribute a Controlled Substance.

10. 18 U.S.C. § 924(c)(1)(A) - Possession of a Firearm in furtherance of a Drug Trafficking Crime.

## TECHNICAL TERMS

11. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video;

4

storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless phones also download applications ("Apps") that are used for a variety of purposes including, but not limited to social media Apps, communication Apps, payment and banking Apps, map Apps and digital storage Apps. Most wireless telephones today also include global positioning system ("GPS") technology for determining the location of the device.

b. **Digital camera**: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. **Portable media player**: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store

5

any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. **IP Address:** An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer connected to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. **Internet:** The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

12. Based on my training, experience, and research, I know that **SUBJECT DEVICE 1 and SUBJECT DEVICE 2** to have capabilities that allows them to serve as wireless telephones, digital camera, portable music/media player, connect to the internet, send and receive emails, and/or send and receive text messages. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

6

## PROBABLE CAUSE

13. The Bureau of Alcohol, Tobacco, Firearms, & Explosives (ATF), is conducting a criminal investigation of VINCENT BANKS regarding possible violations of Title 21, United States Code, Section 841(a)(1) (possession with intent to distribute a controlled substance), and Title 18, United State Code, Section 924(c)(1)(A) (possession of a firearm in furtherance of a drug trafficking).

14. On November 27, 2021, Trooper Farmer with the Virginia State Police (VSP) initiated a traffic stop of vehicle traveling 83-mph in a 55-mph zone. The vehicle was a 2020 Dodge Ram Pickup Truck, bearing NC tag TP39222. Trooper Farmer was notified that the registration was not on file with the North Carolina Division of Motor Vehicles (NCDMV). Trooper Farmer identified the driver as Vincent Dwayne Banks with the Virginia driver's license number of T62555965. Trooper Farmer inquired as to why the vehicle registration would be not on file, to which Banks responded that he just purchased the vehicle the day before and that the tags currently on the vehicle were on it prior to his purchase. Trooper Farmer then retrieved the Vehicle Identification Number (VIN) and conducted a record check through the National Crime Information Center (NCIC) and found that the vehicle had been reported stolen in Prince George County, Virginia.

15. Banks and his female passenger were detained until the stolen record was confirmed through the Prince George County Police Department (PGCPD), then Banks was placed under arrest and a search and inventory of the vehicle was conducted. During the search incident to arrest, a loaded Tisas 45 caliber, Model SS45 pistol, bearing serial number T0620-20Z02263 was found under the driver's seat. A Ziplock bag containing a large number of multi-

colored tablets suspected of containing Ecstasy/ 3,4-methylenedioxymethamphetamine or commonly known as MDMA was also located in the center console.

16. Prince George County Police Department Detectives were notified and responded to the scene. Banks was placed in custody and transported to the Prince George County Police Department to be interviewed. According to investigative reports, during the post Miranda interview Banks advised that he was sold the vehicle by an individual named "Malik" for approximately $10,000.00. Banks added that he paid "Malik" approximately $4500.00 in cash and agreed to pay the rest later. Banks advised that he took possession of the vehicle on November 26, 2021. Banks advised that he had communications with Malik in **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2**. Banks consented to law enforcement reviewing his phone for those communications and provided the passcode for **SUBJECT DEVICE 1** as (111111) and advised that **SUBJECT DEVICE 2** had no passcode. While reviewing **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2**, Detective Travis Stewart (PGCPD) observed conversations in which "Malik" advised Banks to bring $5000.00 and a "choppa" to make the deal for the vehicle. Your affiant has come to know through the debrief of confidential informants, reviewing social media and cell phone search warrants that the term "choppa" is utilized to describe an "AR" or "AK" style firearm.

17. PGPD Detective Stewart and VSP Trooper Farmer believing **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** contain evidence of the criminal activity seized both **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2**. Banks was further transported to the Riverside Regional Jail and charged with multiple felony offenses including, Receiving Stolen Goods, Possession of a Firearm by a Felon, Possession of Ammunition by a Felon, Possession of

a Schedule I or II substance with intent to distribute, as well as receiving the charge of reckless driving.

18. PGPD Detective Stewart obtained and executed a search warrant on the **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** in reference to the observed communications involving the sale of the Ram Pickup to Banks and of illegal narcotics by Banks. The contents of both **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** were extracted, saved, and stored at the PGPD. Copies of the device extractions were transferred to the ATF Richmond I Field Office located at 1011 Boulder Springs Dr Suite 300, North Chesterfield VA. **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** were later released by PGPD into the custody of Jamie Woodley (Banks's mother), due to his incarceration.

19. On January 9, 2023, ATF Special Agent (SA) Roderick Herndon received a copy of a supplemental laboratory analysis from the Virginia Department of Forensic Science (VADFS). The results of the analysis determined that Ziplock bag contained approximately seven hundred and seventy-two (772) multicolored tablets containing a detectable amount of methamphetamine a schedule II drug. The total weight was determined to be approximately 174.88 grams. Your affiant has come to know through training an experience that the amount of narcotics was consistent with that of distribution quantities and not that of personal use.

20. Based on my training and experience, your affiant knows that cellular telephones like **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** are important to a criminal investigation of the distribution of illegal narcotics. In particular, I know:

   a. that narcotic traffickers often use cellular telephones to communicate with sources of supply, drug transporters, facilitators, and customers in connection with their ongoing drug activities, including communication by live conversations, voice messages, text

9

messages, emails, and similar communication methods all conducted via the cellular telephones that often have internet capabilities;

b. that narcotic traffickers often use cellular telephones to maintain records, contact information, notes, ledgers, and other records relating to the transportation, ordering, sale, and distribution of controlled substances, even though such documents may be in code. That the aforementioned books, records, notes, ledgers, etc., are commonly maintained where narcotic traffickers have ready access to them, including but not limited to their cellular telephones;

c. that narcotic traffickers commonly maintain names, addresses and telephone numbers in their cellular telephones for their associates in the narcotic trafficking organization, even if said items may be in code, and that these types of records are sometimes maintained in computers or other electronic data storage devices; and

d. that many cellular telephones have extensive photography and video capabilities. That many narcotic traffickers frequently use their cellular telephones to take, cause to be taken, photographs and/or videos of themselves, their co-conspirators and associates, their property, and their product, and that these traffickers usually maintain these photographs and/or videos, on their cellular telephone.

21. In addition, individuals involved in drug trafficking will frequently take photographs of themselves with cellular telephones holding firearms in order to give themselves greater credibility as an established, armed narcotics or firearms trafficker to convey that they will resist any attempts by customers or suppliers to rob them of their drugs and their drug trafficking proceeds. Also, given that devices like **SUBJECT DEVICE 1** and **SUBJECT**

DEVICE 2 are so frequently utilized in day-to-day life, queries or searches for particular make and models of firearms may also be undertaken.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on electronic devices. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of drug trafficking crimes as described herein, but also may provide forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be found on the SUBJECT DEVICE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

11

d.  The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

Respectfully submitted,

/s/ Roderick Herndon
Roderick Herndon
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and Sworn to me via telephone on: JAN. 30, 2023.

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

12

## ATTACHMENT A

The property to be searched are the forensic extractions of an Apple I-Phone assigned call 804-943-4356 and an Android cell phone assigned call number 804-490-5199, seized from Vincent Banks on November 27, 2021. Contents of which is located at the Richmond I ATF Office located at 1011 Boulder Springs Dr Suite 300, located in the Eastern District of Virginia.

1. This warrant authorizes the forensic examination of the devices for the purpose of identifying the electronically stored information described in Attachment B, which is incorporated by reference.

## ATTACHMENT B

25. All records in **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2**, described in Attachment A, which is incorporated by reference herein, that relate to violations 21 U.S.C. § 841(a)(1), possession with intent to distribute a controlled substance, as well as violations of 18 U.S.C. § 924(c)(1)(A), Possession of a Firearm in Furtherance of a Drug Trafficking Crime, including:

   a. Notes, ledgers, messages, and similar records relating to the transportation, ordering, purchasing, and distribution of illegal controlled substances;

   b. Notes, ledgers, messages, and similar records relating to the ordering, purchasing, and distribution of firearms;

   c. Address books, phone books, applications ("Apps"), and similar records reflecting names, addresses, telephone numbers and other contact or identification data of customers and suppliers of illegal narcotics and/or firearms;

   d. Applications and records relating to drug trafficking proceeds and expenditures of money and wealth, including bank records, deposit receipts, investments and cryptocurrency;

   e. Calendars, applications, and other records of meetings, locations, schedules, and interstate and foreign travel.

   f. Digital photographs, videos, or audio recordings of target and/or his confederates, assets, controlled substances, expenditure of drug proceeds, and specific locations documented by the cellular device;

   g. Digital photographs, videos, or audio recordings of target and/or his confederates and firearms;

   h. Stored communications, including text messages, MMS messages, voicemails, application communications, social media communications.

   i. Any subscriber or owner information for the cellular telephones.

   j. Any cellular telephone records, and telephone books or lists, or receipts relating to the acquisition and purchase of cellular telephones, or minutes purchased or applied to cellular telephones.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of devices or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2. Evidence of user attribution showing who used or owned **SUBJECT DEVICE 1** and **SUBJECT DEVICE 2** at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, browsing history and location history.